UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

SECILY BAXTER, et al.,          )
                                )
     Plaintiffs,                )   Civil Action No. 5:08-485-JMH
                                )
v.                              )
                                )
                                )
ELIZABETH DAUGHTERY, et al.,    )   **MEMORANDUM OPINION AND ORDER**
                                )
     Defendants.                )

                   **       **       **       **       **

     This matter is before the Court on Defendant Elizabeth
Daugherty's Motion to Dismiss or for Summary Judgment [Record No.
9]. Defendant Daugherty argues that Plaintiffs' claims against her
are not ripe or are barred, in part or in whole, by the doctrine of
sovereign immunity, the Eleventh Amendment to the United States
Constitution, absolute and qualified immunity doctrines, and the
doctrine of federal abstention. Plaintiffs have filed a Response
[Record No. 10], and Defendant Daugherty has made her Reply in
further support of her Motion [Record No. 12]. The Court being
sufficiently advised, this Motion is ripe for decision.

     **I.   BACKGROUND**

     Defendant Elizabeth Daugherty is a social worker employed by
the Commonwealth of Kentucky, Department for Community Based
Services. On November 6, 2008, Daugherty interviewed a child,
known as J.L. for the purposes of this litigation, at his school

                              -1-

due to allegations of neglect or abuse made by a confidential informant.  At that time, J.L.'s body was covered in bedbug bites. He reported to Daugherty that he lived in Plaintiff Secily Baxter's apartment with his mother, Nickie Lewis, and gave an account of activities at that apartment that caused Daugherty to believe that further investigation of the home was necessary.  Specifically, J.L. told Daugherty that Baxter had thrown a lamp at her boyfriend and that the shattered glass from the lightbulb had hit him, that Baxter's boyfriend hit his head and that of Baxter's son, C.B., together, and that Baxter's boyfriend hit Baxter in the face.  J.L. described other incidents of domestic violence in the apartment, and reported that Baxter, Baxter's boyfriend, J.L.'s mother, and others regularly smoked marijuana in the home.  Sometime later that day, at least forty-five minutes after J.L. had returned to Baxter's apartment from school, Daugherty visited Baxter's home. She was accompanied by two police officers because of concerns for Daugherty's safety when visiting the home.

The Court has received two differing accounts of Daugherty's entry into Baxter's apartment. Daugherty states that, when they found Baxter's apartment, one of the officers knocked on the door of Plaintiff's apartment, and a child answered.  Baxter then came to the door and that the officers and Daugherty spoke to her from the front step about the purpose of their visit.  Daugherty asked if she and the officers "could come into the apartment to discuss

these matters" and that Baxter "agreed," responding "Yeah, I guess." Daugherty states that she and the officers then entered the apartment.

Plaintiff Baxter, however, has affied that the social worker and the police officers walked into the apartment without knocking and without being invited in, and that she then asked "Can I help you?" Similarly, Lauren Warren and Tonesha Berry have each stated in their own affidavits that they witnessed the police and the social worker, Daugherty, come into the apartment without knocking and without permission. Plaintiff then engaged Daugherty in a conversation about Daugherty's investigation of child neglect and abuse of Nickie Lewis' son, whom Daugherty believed to live in the residence based on the child's statements.

While in the apartment, Daugherty observed or had reported to her the presence of roaches and other bugs; dirty, molded dishes in the kitchen with insects crawling on them; two animals (which the Court presumes to be pets) that were permitted to urinate in the home; and the presence of animal feces. Daugherty also observed the presence of an adult female, Melanie, who appeared to be intoxicated. When Baxter was asked where Nickie Lewis could be found, Baxter claimed that she was not there and had, in fact, traveled to Harlan, Kentucky, while Baxter was watching J.L. until his former foster parents arrived to take him into their care. Also present in the home was man named Danny, who appeared nervous.

Baxter explained that Danny was her boyfriend and affected surprise when told that Daugherty had been informed that Danny was in fact Nickie Lewis' boyfriend. One of the officers later moved a pile of clothing in an effort to clear a path to walk only to find Nickie Lewis hiding under the pile of dirty clothing.

During this time, Daugherty questioned Baxter about her marijuana use. Baxter states that because "[t]here were 4 to 5 police officers in my home and a social worker[, she] felt in order to make sure that my son was not removed to be honest and straightforward, which I was." She told Daugherty that she had smoked marijuana on November 5 while C.B. was staying with Baxter's mother. Daugherty told Baxter that they were going to remove Cameron after finding Nickie Lewis and completed paperwork regarding environmentally unsafe conditions in the home on the spot.[1]

After consulting with others, it was determined that it was not safe to leave the children in the home and that alternative placement should be sought, with a preference for placement with family members instead of foster care. Baxter and Lewis were asked to call family members to see if they could find family members to temporarily care for their respective children. Baxter called

---

[1]   Baxter asked Daugherty if she could call her attorney when Daugherty began questioning Baxter and telling her that C.B. would be removed. Baxter states that Daugherty responded "go ahead and call your lawyer then you will all go to jail."

several relatives, including her grandmother who lived in Richmond, Kentucky, and Baxter's grandmother, Frances Baxter, agreed to drive to Lexington to get C.B. Daugherty and the others waited at Baxter's apartment for Frances Baxter to arrive. When she arrived, Frances Baxter signed a Prevention Plan, agreeing to care for C.B. Baxter also signed a separate Prevention Plan, in which she agreed to the temporary removal of her son, to complete a substance abuse assessment, to submit to a drug test, to complete a domestic violence and anger management assessment, to maintain a home free and safe from safety hazards, and to be "drug and alcohol free at all times." Daugherty denies that she coerced Baxter into signing the Prevention Plan but states that she did tell her that "if a family member could not be found to temporarily care for C.B. that we would have to place him temporarily in foster care for his own safety."

On November 20, 2008, the Commonwealth filed a Petition for Dependency Neglect or Abuse before the Fayette Circuit Family Court, *In the Interest of [C.B.], a child*, Case No. 08-J-02150-001, in which the Commonwealth has taken the position that C.B. has been neglected and needs the protection of the state. Hon. Jo Ann Wise, a Fayette Family Court judge, issued an emergency custody order on November 24, 2008, granting temporary custody of C.B. to the Cabinet, following the discovery that C.B.'s grandmother, who was caring for C.B., was taking narcotics belonging to other

individuals, and in the absence of additional relatives who could care for C.B..

In their Complaint, Plaintiffs seek relief under 42 U.S.C. § 1983, for both Baxter and by Baxter on behalf of her minor son, C.B., alleging that Defendants violated her Fourth Amendment right to be free from warrantless search and seizure and her Sixth Amendment right to consult an attorney. Plaintiffs further allege that Defendants have violated their right to due process under the Fourteenth Amendment because no hearing was held prior the temporary removal of C.B. from Baxter's home. Plaintiffs seek declaratory judgment and injunctive relief (Count I), monetary damages (Count II), and punitive damages (Count III) for same. Defendant Daugherty asks this Court to dismiss Plaintiffs' claims against her, pursuant to Fed. R. Civ. P. 12(b)(1) and (2) for lack of subject-matter and personal jurisdiction, and Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted, or, alternatively, to grant summary judgment in her favor pursuant to Fed. R. Civ. P. 56.

## II. STANDARDS OF REVIEW

When subject matter jurisdiction is challenged under Fed. R. Civ. P. 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion. *Rogers v. Stratton Indus., Inc.,* 798 F.2d 913, 915 (6th Cir. 1986). Further, upon "a Rule 12(b)(1) challenge to subject matter jurisdiction, the court

is empowered to resolve factual disputes." *Id.*

When a challenge is raised under Fed. R. Civ. P. 12(b)(2), plaintiff bears the burden of establishing that personal jurisdiction exists over a defendant. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)).  When a court rules on a Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, the court must consider the pleadings and affidavits in the light most favorable to the plaintiff. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1261-62 (6th Cir. 1996).  To defeat a 12(b)(2) motion to dismiss, the plaintiff need only make a prima facie showing of jurisdiction. *Id.*  Importantly, "a court disposing of a 12(b)(2) motion does not weigh the controverting assertions of the party seeking dismissal." *Id.* (internal citations omitted).

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the sufficiency of a plaintiff's complaint.  The Court views the complaint in the light most favorable to the plaintiff and "must accept as true 'well-pleaded facts' set forth in the complaint." *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 680 (6th Cir. 2004) (quoting *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).  "A complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory."

-7-

*Weiner v. Klais & Co.,* 108 F.3d 86, 88 (6th Cir.1997).  If it appears beyond doubt that the plaintiff's complaint does not state facts sufficient to "state a claim that is plausible on its face," then the claims must be dismissed.  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 541-42 (6th Cir. 2007); *Our Lady of Bellefonte Hospital, Inc. v. Tri-State Physicians Network, Inc.*, No. 06-141-HRW, 2007 WL 2903231, *2 (E.D. Ky. Sept. 27, 2007).

Finally, under Fed. R. Civ. P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no issue as to any material fact, and that the moving party is entitled to judgment as a matter of law."  The moving party may discharge its burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party, which in this case is the plaintiff, "cannot rest on [her] pleadings," and must show the Court that "there is a genuine issue for trial." *Hall v. Tollett*, 128 F.3d 418, 422 (6th Cir. 1997).  In considering a motion for summary judgment the court must construe the facts in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

When the question is one of qualified immunity, however, the

analysis is somewhat altered.  In ruling on a motion for summary
judgment based on the defense of qualified immunity, the existence
of a disputed, material fact does not *necessarily* preclude summary
judgment.  Even if there is a material fact in dispute, summary
judgment is appropriate if the Court finds that – viewing the facts
in the light most favorable to the plaintiff – the plaintiff has
failed  to  establish  a  violation  of  clearly  established
constitutional law.  *Saucier v. Katz*, 533 U.S. 194 (2001);
*Dickerson v. McClellan*, 101 F.3d 1151, 1158 (6th Cir. 1998).

**III. DISCUSSION**

    **A.   SOVEREIGN IMMUNITY**

States "possess . . . certain immunities from suit in . . .
federal courts." *Ernst v. Rising*, 427 F.3d at 358.  This immunity
extends to actions against state officials sued in their official
capacities for money damages.  "[A] suit against a state official
in his or her official capacity is not a suit against the official
but rather is a suit against the official's office," e.g., the
State.  *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71
(1989).  In this instance, there is no dispute that the Cabinet is
an agency of the Commonwealth and, thus, Baxter's official capacity
claims against social worker Daugherty, as an employee of the
Cabinet, are a suit against the Commonwealth of Kentucky.

There are only three exceptions to this immunity:  (1) when
the State consents to suit, (2) when the exception set forth in *Ex*

*parte Young*, 209 U.S. 123 (1908) applies, and (c) when Congress has abrogated a State's immunity. *S&M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008). In this instance, the Commonwealth has not expressly consented to suit nor has Congress abrogated the Commonwealth's immunity from suit for cases arising under 42 U.S.C. § 1983. Accordingly, the Court is left to consider the exception under *Ex parte Young*, under which a federal court can grant prospective injunctive or declaratory relief compelling a state official to comply with federal law. *Id.* at 508; *Kentucky v. Graham*, 473 U.S. 159, 165-67 (1985); *Ghassomians v. Ashland Indep. Sch. Dist.*, 55 F. Supp. 2d 675 (E.D. Ky. 1998). All claims for retrospective relief, monetary or equitable, are barred. *S&M Brands, Inc. v. Cooper*, 527 F.3d 500, 507-508 (6th Cir. 2008).

Baxter's request for prospective relief against Daugherty and the other defendants is not yet ripe for consideration by this Court, as discussed above. In her remaining requests for relief, Baxter seeks retrospective relief in the form of both declaratory judgment and monetary compensation on the grounds that Daugherty and the other defendants violated her constitutional rights in the past. Baxter's retrospective official capacity claim against Daugherty is barred by the Eleventh Amendment because it does not fall within the *Ex Parte Young* exception. Accordingly, Baxter's official capacity claims against Defendant Daugherty shall be dismissed.

-10-

**B.   RIPENESS**

In the Complaint, Plaintiffs request relief in the form of an injunction to prohibit Defendants from engaging in "further violations" of Plaintiffs' constitutional rights. [Record No. 1, pp. 10-11, ¶¶ 1, 4.]   However, a constitutional claim is not amenable to the judicial process when it is filed too early, making it unripe, or when the claimant lacks a sufficiently concrete and redressable interest in the dispute such that the plaintiff does not have standing. *Warshack v. United States*, 532 F.3d 521, 525 (6th Cir. 2008).  This is particularly true here as Plaintiffs have not alleged a likelihood that Defendants will again find themselves at Baxter's door seeking entry or taking custody of her child under the same or similar circumstances at any time in the future.

Past exposure to illegal conduct does not, without more, show a present case or controversy demanding injunctive relief if unaccompanied by any continuing, present adverse effects. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).  When the threat of repeated injury is speculative or tenuous, there is no standing to seek injunctive relief. *Grendell v. Ohio Supreme Court*, 252 F.3d 828, 833 (6th Cir. 2001) (discussing *Lyons*).  Thus, for example, "[t]he constitutional validity of a warrantless search is pre-eminently the sort of question which can only be decided in the concrete factual context of the individual case."  *Id*. at 529 (quoting *Sibron v. New York*, 392 U.S. 40, 59 (1968)).  As alleged,

the same may be said of claims that Plaintiffs were denied their right to counsel or due process.  Speaking plainly, Plaintiffs' request for prospective relief on any of their theories is the rough equivalent of asking this Court to tell Defendant Baxter and the other defendants to "be good," and the Court declines the invitation.  Defendant Daugherty's Motion to Dismiss shall be granted, and Plaintiff's requests for relief in the form of prospective injunctive relief against Daugherty in her official or individual capacity shall be dismissed without prejudice for failure to state a claim at this time.

### C.   ABSOLUTE IMMUNITY

Absolute immunity protects judges, prosecutors, and other state actors who perform analogous quasi-judicial functions, including social workers who initiate dependency, neglect, or abuse proceedings, or seek emergency custody of neglected or abused children.  This is analogous to the role a prosecutor takes in a criminal case.  *Butz v. Economou*, 438 U.S. 478, 515 (1978); *Holloway v. Brush*, 220 F.3d 767, 772 (6th Cir. 2000); *Kurzawa v. Mueler*, 732 F.2d 1456, 1458 (6th Cir. 1984); *Salyer v. Patrick*, 874 F.2d 374, 377-78 (6th Cir. 1989).  The Court has carefully reviewed the Amended Complaint and Plaintiffs' Response to Defendant Daugherty's Motion to Dismiss or for Summary Judgment and finds that they do not complain of Daugherty's request for an emergency custody order or seek relief because Daugherty signed the state

-12-

court neglect petition affidavit.  As the case stands, Plaintiffs seek relief only for Daugherty's actions which took place at Baxter's apartment on November 6, 2008, during her investigation, which claims are not barred by absolute immunity.  Daugherty's Motion shall be denied with regard to her argument that absolute immunity bars any of Plaintiffs' remaining claims.

### D.   QUALIFIED IMMUNITY

Defendant Daugherty next argues that she is due qualified immunity for the remaining claims against her in her individual capacity.  Qualified immunity is an affirmative defense whereby state officials performing discretionary functions are "shield[ed] ... from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton,* 483 U.S. 635, 638 (1987).  Once this defense is raised, it becomes the plaintiff's burden to prove that the government official is not entitled to qualified immunity.  *Gardenhire v. Schubert,* 205 F.3d 303, 311 (6th Cir. 2000).

In evaluating such claims, this Court must determine "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Estate of Carter v. City of Detroit,* 408 F.3d 305, 310 (6th Cir. 2005) (footnote omitted).  In evaluating an assertion of qualified immunity, the

-13-

Supreme Court has recently announced that "[t]he judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, ___ U.S. ____, 129 S.Ct. 808, 818 (2009); *Modlowan v. City of Warren*, Nos. 07-2115, 07-2116, 07-2117, __ F.3d ___, 2009 WL 2497969 (6th Cir. Aug. 18, 2009)

   In this instance, the Court finds it most useful to first consider whether, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Only then will the Court consider whether the right was clearly established. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.*

### 1.   Fourth Amendment

   The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated" and that:

>          [N]o Warrants shall issue, but upon probable
>          cause, supported by Oath or affirmation, and
>          particularly describing the place to be
>          searched, and the persons or things to be

seized.

U.S. Const., Amend. IV.  "The Fourth Amendment applies to [social workers], as it does to all other officers and agents of the state whose requests to enter, however benign or well-intentioned, are met by a closed door.  There is . . . no social worker exception to the strictures of the Fourth Amendment."  *Walsh v. Erie County Dep't of Job and Family Servs.*, 240 F.Supp.2d 731, 746-47 (N.D. Ohio 2003).  Thus, even in the context of a social worker's efforts to safeguard a child, warrantless searches are *per se* unreasonable under the Fourth Amendment, except in a "few specifically established and well-delineated exceptions."  *Katz v. United States,* 389 U.S. 347, 357 (1967).

In the instant matter, it is undisputed that Daugherty and the police officers who accompanied her arrived at Baxter's door and, ultimately, gained entry to Baxter's apartment without a warrant. "Having not complied with the warrant requirement, the [Defendant] must show that an exception to the warrant requirement authorized [her] entry into [Baxter's] home." *Walsh,* 240 F.Supp.2d at 747-48 (citing *United States v. Rohrig*, 98 F.3d 1506, 1514-15 (6th Cir. 1996) ("In the absence of a warrant authorizing the officers' entry into Defendant's home, the Government must overcome the presumption that this entry was unreasonable.")).  Daugherty argues that her entry, the search of Baxter's apartment, and the seizure of C.B. were permissible because (1) Baxter voluntarily consented to them

-15-

and (2) exigent circumstances required action in order to insure the well-being of C.B. For the reasons which follow, the Court concludes that neither exception applies in this instance.

### i. Consent

A person can waive his or her Fourth Amendment right to be free of a warrantless search by providing voluntary consent. *United States v. Van Shutters,* 163 F.3d 331, 335 (6th Cir. 1998). A person can manifest consent through action as well as words. *See United States v. Walls*, 225 F.3d 858, 863 (7th Cir. 2000). Of course, "[t]he government has the burden of demonstrating that consent was 'freely and voluntarily given,' and was not the result of coercion, duress, or submission to a claim of authority." *Van Shutters,* 163 F.3d at 335. Voluntary consent requires:

> the absence of any overt act or threat of force against the defendant; the absence of any promises to the defendant or any indication of "more subtle forms of coercion that might flaw his judgement"; ... [and] the absence of any indication that the defendant was a "newcomer to the law, mentally deficient, or unable in the face of custodial arrest to exercise a free choice; ...."

*United States v. Crowder*, 62 F.3d 782, 787 (6th Cir. 1995) (citations omitted). In evaluating the situation, the Court must consider the "totality of the circumstances" surrounding the alleged consent. *Van Shutters,* 163 F.3d at 335.

Although Daugherty argues that she believed that Baxter had given consent for Daugherty and the officers to enter her home,

-16-

there is a factual dispute as to whether Daugherty and the officers knocked and were granted permission to enter Baxter's apartment or whether Defendants simply entered without invitation. Daugherty claims that she and the officers knocked on the door and were admitted by Baxter. Baxter and others have stated under oath that Baxter was seated in her home when the Daugherty and the police officers suddenly appeared inside, without announcing themselves or being invited to enter. Thus, Defendant Daugherty has failed to demonstrate that there is "no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). Accordingly, the Court cannot determine as a matter of law that consent excused the warrantless entry, search, and seizure, and Daugherty is not entitled to qualified immunity as to Plaintiffs' 42 U.S.C. § 1983 claims against her in her individual capacity for violation of Plaintiffs' Fourth Amendment right to be free from unlawful search and seizure.[2]

### ii. Exigent Circumstances

Daugherty next takes the position that a reasonable social worker, constructively aware of the Sixth Circuit opinions in *Smith*

---

[2]     Further, even if Defendant Daugherty were to concede an interpretation of the facts in the light most favorable to the Plaintiffs' case it would avail Daugherty nothing, for a reasonable jury could find that no consent existed on the facts alleged by Plaintiffs. Certainly no juror or jurist, for that matter, could conclude that Baxter's right to be free from a warrantless entry, search, and seizure was not well-established at the time of Daugherty's entry into Baxter's apartment in the absent of a viable exception.

*v. Williams-Ash*, 520 F.3d 596 (6th Cir. 2008), and *Jordan v. Murphy*, 145 Fed. Appx. 513 (2005), would objectively reasonably believe that entering and temporarily removing a child from Baxter's unsanitary home was a lawful exigent circumstance. Exigent circumstances may justify a warrantless entry into a home in such a situation where there is a risk of danger to the police or others, i.e., a risk of "imminent harm." *See Walsh*, 240 F.Supp.2d at 748 (citing *Rohrig*, 98 F.3d at 1515; *United States v. Johnson*, 22 F.3d 674, 680 (6th Cir. 1994)). Daugherty argues that, in this instance, there was an "emergency situation" or risk of danger to J.L. and C.B. that justified her entry into the home without a warrant. She points to the fact that, prior to arriving at Baxter's apartment, Daugherty had interviewed J.L., a child who had been badly bitten by bedbugs in Baxter's home and had told Daugherty that (1) his head had been hit together with that of Baxter's child by Baxter's boyfriend, (2) that he had witnessed domestic violence by and between Baxter and her boyfriend (during which, on at least one occasion, he was showered with shards of glass from a broken light bulb), and (3) that he had observed illegal drug use by Baxter and others, including Baxter's boyfriend, in Baxter's home. These conditions, according to Daugherty, rise to the level of an exigent circumstance that would permit a warrantless entry, search, and seizure.

A reasonable jury could conclude, however, that Daugherty did

-18-

not rely on an exigent circumstance when she decided to visit Baxter's apartment without a warrant. Indeed, she has stated to this Court that she relied on Baxter's consent to enter the apartment. Further, the circumstances Daugherty relies upon to justify the entry, ex post facto, do not provide a showing of imminent or likely harm sufficient to justify warrantless entry under the exigent circumstances exception. Certainly, J.L.'s report of the dangers faced by the children in Baxter's home was disturbing, but the situation was not one that provided Daugherty a reason to believe that J.L. and, eventually, C.B. were in danger of imminent harm. Imminent harm would mean that evidence indicated that the children in Baxter's home were "in immediate threat of death or severe physical harm" and there existed "sufficient exigent circumstances to relieve the state actors here of the burden of obtaining a warrant." *Roska v. Peterson,* 304 F.3d 982, 990 (10th Cir. 2002) (cited in *Walsh,* 240 F.Supp.2d at 750).

The environmental conditions related by J.L. to Daugherty were, without doubt, extremely unpleasant and, perhaps, even unacceptable. The reports of abuse that J.L. made were dire. Nonetheless, J.L. was at school when he reported to Daugherty his version of the conditions and events in Baxter's apartment. Clearly, sometime passed prior to the end of the school day and, even then, J.L.'s subsequent transport from school to Baxter's apartment. Daugherty did not visit Baxter's apartment until,

-19-

according to Baxter, J.L. had been there for at least forty-five minutes after his return from school. The passage of time, if nothing else, belies Daugherty's argument that she believed there to be an immediate threat of death or severe physical harm to J.L.. Even if she had a bona fide belief of a threat to J.L., it is undisputed that during the time available to her, which exceeded forty-five minutes, Daugherty did not seek a warrant and has not offered any explanation for her failure to do so. On these facts, a reasonable jury could conclude that the reported circumstances in Baxter's apartment, to the extent that they might have actually motivated Daugherty to act expeditiously, were not exigent because the threat was not "immediate" as Daugherty now argues. Accordingly, the Court cannot determine as a matter of law that exigent circumstances excused the warrantless entry, search, and seizure, and Daugherty is not entitled to qualified immunity as to Plaintiffs' 42 U.S.C. § 1983 claims against her in her individual capacity for violation of Plaintiffs' Fourth Amendment right to be free from unlawful search and seizure. This claim remains pending at this time.

### 2. Sixth Amendment

Plaintiffs next allege that Baxter was denied the right to consult with counsel during the events which transpired at her apartment. The Sixth Amendment provides that "the accused . . . enjoy[s] the right to "have the Assistance of Counsel for his

-20-

defense" in any "criminal prosecution." *See* U.S. Const. Amend. VI. Neither party has identified any case law which indicates that the Sixth Amendment requires a social worker to permit consultation with counsel during an interview or investigation which leads to a civil proceeding.  Indeed, although police officers and a social worker were present at her apartment, no criminal proceeding took place in Baxter's apartment or, to the best of the Court's knowledge, was commenced following the events in Baxter's apartment.  Notably, the child abuse or neglect petition proceeding which is pending in Fayette Circuit Family Court is a civil proceeding.  Further, Plaintiffs have not alleged that Baxter has been denied an opportunity to be represented by counsel in those civil proceedings  – in which Sixth Amendment guarantees do not apply.  As there has been no demonstration that Daugherty's conduct violated Plaintiffs' Sixth Amendment right to counsel, she is due qualified immunity as to this claim against her in her individual capacity, and it shall be dismissed.

### 2.    Fourteenth Amendment

Plaintiff Baxter next complains that Daugherty violated Baxter's due process right to a hearing before the temporary removal of C.B. from Baxter's home.[3]  It is well-established that

---

[3]To the extent that the claim for violation of one's Fourteenth Amendment due process rights stems from the warrantless entry of the social worker and police into Baxter's apartment or even the "seizure" of C.B. himself, this claim will not lie.  If a constitutional claim "is covered by a specific constitutional

"under the [Fourteenth Amendment], the parent-child relation gives rise to a liberty interest that a parent may not be deprived of absent due process of law." *Williams-Ash*, 520 F.3d at 599 (quoting *Kottmyer v. Maas,* 436 F.3d 684, 689 (6th Cir.2006)). It is for this reason that Courts have held that "[n]otice and an opportunity to be heard are necessary before parental rights can be terminated." *Anh v. Levi*, 586 F.2d 625, 632 (6th Cir. 1978). "Even a temporary deprivation of physical custody requires a hearing within a reasonable time." *Smith v. Williams-Ash*, 173 Fed. Appx. 363, 365-66 (6th Cir. 2005) (citing *Doe v. Staples*, 706 F.2d 985, 990 (6th Cir. 1983)).

Here, Daugherty acknowledges that she removed C.B. from Baxter's home without anyone affording Baxter a hearing.[4] She insists, however, that she did not violate Baxter's due process rights because she removed C.B. with Smith's consent, under the terms of a Protective Plan to which Baxter agreed and which permitted C.B. to be cared for by his great-grandmother. Baxter

provision, . . . the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 420 U.s. 259, 272 n. 7 (1997); *Albright v. Oliver*, 510 U.S. 266, 273 (1994). The more specific textual source of protection found in the Fourth Amendment is the proper claim for any claim based on a purported illegal entry into Baxter's home and subsequent illegal "seizure."

[4]   The Court notes that Baxter does not complain that the subsequent hearing of the Family Court concerning temporary custody of C.B., which was held on November 20, 2008, was not held within a reasonable time. She objects to the removal of C.B. on November 6, 2008, only insofar as there was no hearing prior to the removal.

argues that the agreement was the product of coercion because she feared that, if she did not agree to the arrangement, she would be prosecuted for drug offenses or some other crime.

The Sixth Circuit has previously considered the constitutionality of a voluntary safety plan similar to the one at issue in this case, finding that when a parent voluntarily consents to a safety plan, "no hearing of any kind is necessary; hearings are required for deprivations taken over objection, not for steps authorized by consent." *Williams-Ash*, 520 F.3d at 599-600 (quoting *Dupuy v. Samuels,* 465 F.3d 757, 761-62 (7th Cir. 2006)). The Sixth Circuit agreed with the reasoning in *Dupuy* that, notwithstanding the fact that safety plans may be inherently coercive when agencies force parents to sign the plan or face the threat of formal removal proceedings, "[i]t is not a forbidden means of 'coercing' a settlement to threaten merely to enforce one's legal rights." *Id.* (quoting *Dupuy*, 465 F.3d at 762). In the instant matter, there is no suggestion that Daugherty or the officers indicated that Baxter had the choice of having her child removed from her home or facing criminal charges. Rather, Daugherty, if anything, indicated that Baxter had the choice of having her child removed and placed in state care without her consent or having her child cared for by the relative of Baxter's choice, which could only be accommodated with Baxter's agreement. Baxter chose the latter. The Court will never know what process might have been provided had Baxter chosen the

former and needs not speculate, as those facts are not before the Court. Having considered the matter, the temporary and consensual removal of C.B. from Baxter's home in this instance does not violate clearly established Fourteenth Amendment jurisprudence which requires a hearing within a reasonable time because Baxter consented to the Plan. In the absence of a violation of an identifiable constitutional right, Daugherty is due qualified immunity and summary judgment shall be granted on this basis with regard to Plaintiffs' allegation that Daugherty, in her individual capacity, has violated their Fourteenth Amendment rights.

### E. ABSTENTION

Finally, Daugherty argues that the Court should abstain from hearing the claims which remain against her in her individual capacity on the grounds that Plaintiffs' request for relief from this Court is a collateral attack on the proceedings before the Fayette Circuit Family Court or, in the alternative, simply because wise judicial administration requires deferring this action until the dependency neglect or abuse case is completed. For the reasons which follow, the Court declines to do so.

### 1. *Younger* Abstention

Because there is a pending state suit, the Court will apply the doctrine of *Younger* abstention to determine whether it would be better to abstain from any decision in this matter at this time. The doctrine was recently summarized by the Sixth Circuit Court of

Appeals as follows:

> In *Younger v. Harris,* the Supreme Court held
> that federal injunctions against a state
> criminal law enforcement process could be
> issued only "under extraordinary circumstances
> where the danger of irreparable loss is both
> great and immediate." 401 U.S. [37,] 45
> [(1971)]. So-called "*Younger* abstention" was
> later extended to civil proceedings in state
> court. *Huffman v. Pursue, Ltd.,* 420 U.S. 592
> (1975). The Supreme Court in these cases
> noted that federal courts should not act to
> restrain a criminal prosecution, or interfere
> with state appellate proceedings. *Younger,*
> 401 U.S. at 43; *Huffman,* 420 U.S. at 608.
>
> Three factors determine whether a federal
> court should abstain from interfering in a
> state court action: (1) whether the underlying
> proceedings constitute an ongoing judicial
> proceeding, (2) whether the proceedings
> implicate an important state interest, and (3)
> whether there is an adequate opportunity in
> the state proceedings to raise a
> constitutional challenge. *Tindall v. Wayne
> County Friend of the Court,* 269 F.3d 533, 538
> (6th Cir. 2001).

*Fieger v. Cox*, 524 F.3d 770, 774-75 (6th Cir. 2008). "Although

*Younger* arose in the context of a state criminal proceeding, the

Supreme Court has extended its principles to civil enforcement

actions and civil matters between private litigants where an

important state interest is involved." *Carroll v. City of Mount

Clemens*, 139 F.3d 1072, 1074 (6th Cir. 1998) (citing *Trainor v.

Hernandez*, 431 U.S. 434, 444 (1977) (state civil fraud proceeding

to recover improper benefits by state welfare department); *Huffman,*

420 U.S. at 604 (state civil nuisance action against adult theater

-25-

by local sheriff and prosecutor); *Mann v. Conlin*, 22 F.3d 100 (6th Cir. 1994) (abstention proper in light of pending custody dispute between two private civil litigants in state court)). In addition to actions seeking injunctive relief, the same analysis applies in "federal declaratory judgment actions because they involve 'precisely the same interference with and disruption of state proceedings' as an injunction." *Carroll*, 139 F.3d at 1074 (quoting *Samuels v. Mackell,* 401 U.S. 66, 72 (1971)).

At the time this matter was filed, there was a state court action pending in the Fayette Circuit Family Court.  *See Loch v. Watkins*, 337 F.3d 574, 578 (6th Cir. 2003) (court looks to whether state action was pending when federal suit was filed in determining whether state courts are pending).  The Court has not been advised that those proceedings have concluded and, thus, assumes that they are ongoing.  Thus, the first element, that the other proceedings constitute an ongoing judicial proceeding, is met.  Secondly, the state court proceedings involve the important state issues of the custody and welfare of a minor child.  Such issues of domestic law are necessarily of paramount state interest, *Mann*, 22 F.3d at 106, and the second element is met.

All of this noted, the Court is not persuaded that the Fayette Circuit Family Court could provide Plaintiffs' with an adequate opportunity to raise their constitutional claims.  Certainly, Rule 2(A) of the Rules of Practice of the Fayette Circuit Family Court

confines that court's jurisdiction in a fairly narrow fashion, although the Court is aware of no authority which would preclude the resolution of constitutional questions which arise in the context of the listed types of cases before the Family Court. Yet, in this case, how would such a request for declaratory relief based on the Fourth Amendment avail Plaintiffs or even be relevant to the civil case that is proceeding there? To the extent that Plaintiffs could raise it, for example, there is no ongoing criminal proceeding in which the evidence obtained from Daugherty's entry into Baxter's home could be barred from evidence based on an exclusion doctrine so as to afford her relief. This Court cannot say that "the requested relief would constitute undue federal interference in state judicial or quasi-judicial proceedings," as required for the application of *Younger* abstention. *Carroll*, 139 F.3d at 1077 (citing *Huffman,* 420 U.S. at 601-05). Providing Plaintiffs the relief they request – declaring Defendants' entry into Baxter's home unconstitutional or compensating Plaintiffs for same – would not result in this Court's interference with the civil proceeding before the Fayette Circuit Family Court. Doing so would not make any difference as to the consideration or weighing of evidence in that civil proceeding or, in any way, impact the outcome of that case. Accordingly, the Court declines to abstain based on an application of the *Younger* abstention doctrine.

### 2. *Colorado River* Abstention

Daugherty also argues that this Court should abstain because a wise judicial administration requires deferring resolution of this action until the state case is completed under *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). She offers no explanation for how she believes that allowing this case to proceed to conclusion would interfere with the pending state court action or undermine judicial economy, other than to say that it would do so "undoubtedly." The Court is not persuaded. Again, providing Plaintiffs the relief they request – declaring Defendants' entry into Baxter's home unconstitutional or compensating Plaintiffs for same – would not result in this Court's interference with the civil proceeding before the Fayette Circuit Family Court. Nor would it work any sort of judicial lack of economy. As stated before, doing so would not make any difference as to the consideration or weighing of evidence in the pending state civil proceeding or, in any way, impact the outcome of that case. Accordingly, the Court declines to abstain based on an application of the *Colorado River* abstention doctrine.

**IV. CONCLUSION**

For all of the reasons stated above, Defendant Daugherty's Motion shall be granted in part and denied in part.

Accordingly, **IT IS ORDERED** that Defendant Elizabeth Daugherty's Motion to Dismiss or for Summary Judgment [Record No. 9] shall be, and the same hereby is, **GRANTED IN PART** and **DENIED IN**

**PART.**

    This the 30th day of September, 2009.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge